NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW WEIST, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 2:16-cv-05439-SDW <br><br> **OPINION** <br><br> July 10, 2017 |

**WIGENTON,** District Judge.

This matter comes before the Court on Plaintiff Andrew Weist's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Donna A. Krappa's ("ALJ Krappa", "the ALJ") denial of Plaintiff's claim for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Krappa's factual findings are supported by substantial credible evidence and that her legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

I. **PROCEDURAL AND FACTUAL HISTORY**

A. **Procedural History**

On July 9, 2012,[1] Plaintiff filed a Title II application for DIB, alleging disability beginning January 25, 2012, based on depression, headaches, neck pain, and dizziness. (Tr. 170, 186.) Plaintiff's application was denied initially on December 28, 2012, and upon reconsideration on August 1, 2013. (Tr. 1, 120.) Plaintiff's subsequent request for a hearing before an administrative law judge was granted and ALJ Krappa held a hearing on January 8, 2015. (Tr. 27, 126.) On March 13, 2015, ALJ Krappa issued a decision finding Plaintiff to be not disabled under sections 216(i) and 223(d) of the Act, thereby denying his DIB claim. (Tr. 9-22.) On July 5, 2016, the Appeals Council denied Plaintiff's request for review of ALJ Krappa's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.) On September 7, 2016, Plaintiff filed an appeal with this Court, requesting that the Commissioner's decision be reversed and that Plaintiff be awarded Title II benefits under the Act. (*See* Compl. 2-3).

B. **Factual History**

1. **Personal and Employment History**

Plaintiff was born January 14, 1970. (Tr. 170.) He has an 11th grade education and worked as a cemetery carpenter, cemetery maintenance worker, and an automobile body repair helper from 1995 to 2012. (Tr. 187.) He was 42 years old when he allegedly became disabled on January 25, 2012, due to injuries sustained in an automobile accident. (Tr. 32, 170.) In a function report that he submitted with his application for benefits, he reported that his daily activities are limited to pain management. These include taking pain pills with each meal, icing his neck and shoulder, and showering. (Tr. 197.) In the report, Plaintiff claimed to be unable to walk for more than

---

[1] This Court notes that there is a discrepancy in the record as to the date on which Plaintiff initially applied for DIB. For purposes of this Opinion, this Court treats July 9, 2012 as the relevant date.

twenty feet without rest and that he was unable to take care of himself due to pain, dizziness, and headaches. (Tr. 197-202.) Plaintiff also testified that, due to fear, he no longer drives. (Tr. 31.)

### 2. Medical History

#### a. Automobile Accidents

Plaintiff testified that on January 25, 2012, he was involved in a work related accident when his truck was sideswiped. (Tr. 18, 32, 37.) He testified that, about a year later, he was involved in another automobile accident in which his head hit a window after he was rear-ended. He testified that he was involved in a third accident in 2013,[2] in which he was again rear-ended. (Tr. 39.) According to Plaintiff, he subsequently "did some treatment and then that was it." (Tr. 39.)

#### b. Emergency Room Visits

Plaintiff visited the emergency room of Robert Wood Johnson University Hospital on June 20, April 11, and May 4 of 2012; as well as; on January 2, August 12, and September 12 of 2014 due to neck pain and headaches. He was treated with pain medications and discharged on each occasion. (Tr. 18, 285-313, 411-24.)

#### c. Physical Health Treatment

Dr. David Adin, D.O. ("Dr. Adin"), treated Plaintiff from February 1, 2012, to June 21, 2012. (Tr. 314-23.) On February 1, Plaintiff presented complaining of neck pain, shoulder pain, and headaches. (Tr. 315.) He denied ever having pain in his shoulder or neck in the past. (Tr. 315.) Upon examination, Dr. Adin observed limited mobility and a decreased range of motion in the neck, as well as a limited range of motion in the left shoulder with positive giveaway weakness. (Tr. 316.) There was no evidence of sensory deficits in the upper limbs. Dr. Adin diagnosed

---

[2] ALJ Krappa's opinion refers to the final accident as occurring in 2014, however, Plaintiff testified that it occurred in 2013 (Tr. 18, 39.)

Plaintiff with cervical derangement, left shoulder impingement syndrome, cervicogenic headaches, and a possible underlying traumatic brain injury. (Tr. 315-16.) On March 29, 2012, at the direction of Dr. Adin, Plaintiff underwent MRIs of his left shoulder and cervical spine. The MRI of the left shoulder revealed infraspinatus and supraspinatus peritendinitis, moderate hypertrophic degenerative joint disease of the acromioclavicular joint, and deficiency and irregularity of the anterior superior labrum. (Tr. 275.) The MRI of the cervical spine revealed a broad-based disc bulge at the C4-C5 level and central disc herniation at the C5-C6 level. (Tr. 274.) His treatment consisted of oral analgesics, physical therapy, a hard cervical collar, a Lidoderm patch, and a series of cervical epidural injections. (Tr. 314-23.)

Dr. Allen S. Glushakow, M.D. ("Dr. Glushakow"), conducted a consultative examination of Plaintiff on November 26, 2012. (Tr. 331.) He recorded that Plaintiff presented with complaints of his arms falling asleep, neck pain, and headaches. (Tr. 332.) An examination revealed mild restriction of range of motion in the neck but full range of motion in the bilateral upper and lower extremities. (Tr. 332.) The examination also showed a negative Phalen and Tinel's test, no atrophy or soft tissue swelling, and no evidence of neurological deficits. Plaintiff was also able to take his shoes off in a sitting position without difficulty. (Tr. 332.) Dr. Glushakow diagnosed Plaintiff with "[i]nfraspinatus and supraspinatus peritendinitis of the left shoulder with moderate hypertrophy and degenerative joint disease of the right AC joint[,] C5-C6 central disc herniation with no clinical evidence of cervical radiculitis based on positive MRI findings[, and a] subjective history of headaches." (Tr. 332.)

Plaintiff first visited Dr. Edward G. Novik, M.D. ("Dr. Novik"), on April 18, 2013, for treatment related to Plaintiff's automobile accident alleged to have occurred on April 12, 2013. (Tr. 398.) Plaintiff told Dr. Novik that his pain was 9/10, constant, and limited his everyday

4

activities. (Tr. 398.) Dr. Novik examined Plaintiff and determined that he had an antalgic gait, a limited range of motion in the neck, diminished deep tendon reflex, decreased motor strength in the upper left extremity, and a decreased range of motion in the lumbar spine. (Tr. 18.)

Subsequent progress notes from Dr. Novik indicated that Plaintiff's conditions improved with conservative therapy that consisted of oral analgesics, a series of epidural injections, a bilateral facet joint injection, and a home exercise program. (Tr. 18, 371-403.) Notably, on an October 3, 2013 visit, Plaintiff reported a 60% improvement in his pain after his second epidural steroid injection. (Tr. 28, 385.) During Plaintiff's last visit with Dr. Novik on January 30, 2014, an examination showed a decreased range of motion in all planes of the cervical spine accompanied by muscle spasm, tenderness, pain, and a normal motor and sensory examination of the upper extremities. However, there was no evidence of any abnormalities in Plaintiff's gait, lumbar spine, or bilateral lower extremities. (Tr. 18, 373.)

### d. Mental Health Treatment

Plaintiff was treated by Dr. Alexander Ivanov, M.D. ("Dr. Ivanov") from September 13, 2012 through December 13, 2012. (Tr. 336-43) Dr. Ivanov diagnosed Plaintiff with post-traumatic stress disorder, major depressive disorder, and an environmental driving phobia. (Tr. 18, 338.) Dr. Ivanov also opined that Plaintiff was "100% psychiatrically disabled." (Tr. 342.) Dr. Ivanov treated Plaintiff through medication and psychotherapy. (Tr. 18, 336-62.)

Dr. Steven Barnett, Ph.D ("Dr. Barnett"), treated Plaintiff in September of 2012. (Tr. 324-30.) On October 11, 2012, Dr. Barnett completed a psychiatric report in which he diagnosed Plaintiff with a major depressive disorder, DSM-IV 296.23, severe without psychotic features. (Tr. 324.) He noted that Plaintiff's mood was depressed and agitated, his speech was tangential, and his concentration and memory were below average. Plaintiff reported suicidal ideation but

5

denied intent due to his children. Dr. Barnett also noted that Plaintiff was able to articulate feelings and provide history, had no limitations in social interaction, had average judgment and intellect, and was fully oriented. (Tr. 325-28.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F.

App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

**B. The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the

7

existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ does not find severe impairment or combination of impairments, the claimant is not

disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden

9

of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

#### A. The ALJ's Decision

Under step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 25, 2012, the alleged disability onset date. (Tr. 14); *see* 20 C.F.R. § 404.1571 *et seq*. Under step two, the ALJ considered the entire medical record in determining that Plaintiff has the following severe impairments: disorder of the back (cervical and lumbar); headaches; internal derangement of the right shoulder; and depression. (Tr. 14); *see* 20 C.F.R. § 404.120(c). These findings are supported by substantial evidence in the record. Furthermore, once the ALJ determined which of Plaintiff's impairments qualified as severe, she considered, under step three, whether Plaintiff's severe impairments equal or exceed those in the Listing of Impairments in the Act. *See* C.F.R. § 416.920(a)(4)(iii).

Under step three, ALJ Krappa determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14); *see* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. Specifically, it was found that the requirements of listing 1.04 have not

been met because the evidence fails to demonstrate the existence of a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture, along with the requirements of subsection A, B, or C of the listing. (Tr. 15.) The subsection A requirement is evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, a positive straight-leg raising test (sitting and supine). The subsection B requirement is spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours. The subsection C requirement is lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b. 20 C.F.R. Part 404, Subpart P, Appendix 1.

ALJ Krappa also found that Plaintiff's right shoulder impairment does not meet the requirements of listing 1.02 because there is no evidence of a gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint, along with subsections A or B of the listing. (Tr. 15.) The subsection A requirement is involvement of one major peripheral weight-bearing joint, resulting in inability to ambulate effectively, as defined in 1.00B2b. The subsection B requirement is involvement of one major peripheral joint in each upper extremity, resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c. 20 C.F.R. Part

404, Subpart P, Appendix 1.

Finally, ALJ Krappa found that the requirements of listing 12.04 were not met because neither the subsection B nor the subsection C requirements were met. In order to satisfy the requirements of listing 12.04, either the requirements of both subsections A and B must be satisfied, or the requirements of subsection C must be satisfied. 20 C.F.R. Part 404, Subpart P, Appendix 1. To satisfy the subsection B criteria, Plaintiff's mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. The ALJ found that Plaintiff's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of an extended duration. (Tr. 15.) To satisfy the subsection C criteria, Plaintiff's depression must result in (1) "repeated episodes of decompensation, each of an extended duration"; (2) "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) [c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." 20 C.F.R. § 404, subpt. P, app. 1., § 12.04(C). The ALJ found that the evidence failed to establish any of these criteria. (Tr. 16.)

Before proceeding to step four, the ALJ determined that Plaintiff's residual functional capacity allows him to perform the exertional demands of light work as defined in 20 C.F.R. § 404.1567(b). Specifically, the ALJ found that Plaintiff is able to "lift/carry 20 lbs. occasionally and 10 lbs. frequently; stand/walk for 6 hours in an eight hour work day; sit for 6 hours in an eight hour work day (if given the opportunity at the 45 min. – 1 hr. mark to stand and stretch for 3-5

minutes); and perform unlimited pushing and pulling within the weight restriction given." (Tr. 16.) She also determined that Plaintiff is able to perform jobs that require frequent use of ladders, ropes, or scaffolds; that require frequent use of ramps or stairs; and that require unlimited balancing, stooping, kneeling, and crouching, but only frequent crawling. (Tr. 16.) Finally, she found that Plaintiff can perform jobs that are simple and repetitive, and that require only occasional contact with supervisors, but no contact with the general public. (Tr. 16.) In making these findings, the ALJ considered all of Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p. She also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (Tr. 16.)

Under step four, ALJ Krappa determined that Plaintiff is unable to perform any past relevant work under 20 C.F.R. § 404.1520(f). In reaching this conclusion, the ALJ considered the testimony of the vocational expert, Jackie Wilson, M.S., which referenced the residual functional capacity. Because the ALJ determined that Plaintiff cannot perform his past relevant work, her analysis proceeded to step five to determine whether work exists in the national economy that Plaintiff could perform. *See* 20 C.F.R. § 404.1520(g)

At step five, ALJ Krappa found that Plaintiff can perform work that exists in significant numbers in the national economy. In coming to this conclusion, the ALJ considered Plaintiff's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. (Tr. 21.) The vocational expert took into consideration the ALJ's hypothetical that included Plaintiff's impediments that hinder his ability to perform the full range of light work. In doing so, the vocational expert determined

that a person with Plaintiff's impediments would nonetheless be able to perform the job requirements of unskilled jobs in the light exertional range such as inspector/hand packager, photocopying machine operator, and sealing and canceling machine operator. (Tr. 55.) Because a significant number of these jobs exist in the national economy and Plaintiff has the capability to make a successful adjustment, ALJ Krappa found him to be "not disabled." (Tr. 22.)

### B. The ALJ's Factual Findings are Supported by Substantial Credible Evidence and Her Legal Conclusions are Correct

Plaintiff contends that substantial evidence in the administrative record establishes that he is entitled to DIB and requests that this Court reverse and order the payment of benefits or, in the alternative, reverse and remand this matter for further proceedings. (Pl.'s Br. at 9.) Plaintiff seeks reversal based on two arguments. First, Plaintiff argues that the ALJ's step three listings evaluation is "beyond judicial review." (Pl.'s Br. at 15.) Second, Plaintiff contends that the RFC is not based on substantial evidence and the resulting hypothetical presented to the vocational expert is inaccurate. (*See* Pl.'s Br. at 24.) This Court considers both arguments in turn.

#### 1. The ALJ Properly Analyzed Each Step Three Listing and Properly Considered the Combination of Ailments

As discussed *supra*, the ALJ properly considered Plaintiff's impairments under listings 1.02, 1.04, and 12.04, and she correctly found that he did not meet all of the required criteria. According to Plaintiff, ALJ Krappa did not sufficiently articulate her reasons for finding that Plaintiff lacked an impairment or combination of impairments that met or medically equaled a listed impairment. (Pl.'s Br. at 10-12, 15-23). However, to be found presumptively disabled, a claimant must show that all of the criteria for a listing have been met. *See* 20 C.F.R. § 404.1525(c)(3). Here, the ALJ properly considered Plaintiff's impairments under Listings 1.02,

1.04, and 12.04 and correctly found that he did not meet all of the required criteria.

In analyzing the evidence before her, ALJ Krappa found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. (Tr. 19.) Plaintiff alleged disability partially due to injuries that he sustained in various automobile accidents. (Tr. 30.) However, his treating sources were of the opinion that conservative therapy was adequate to treat his C5-6 disc herniation and that he was not a candidate for surgical intervention. (Tr. 19.) Additionally, Dr. Novik's notes report that Plaintiff's symptoms from both his January 2012 and April 2013 accidents improved with another course of conservative therapy. (Tr. 19.) Similarly, the ALJ found that Plaintiff's testimony that he could only stand ½ hour, sit ½ hour, walk ½ hour, and lift ½ gallon of milk was inconsistent with the findings of Dr. Glushakow's November 2012 examination that noted that Plaintiff was able to walk with a normal unassisted gait and station, that he had full range of motion in the bilateral upper and lower extremities, and that he was able to take his shoes off in a sitting position with no difficulty. (Tr. 19.) Furthermore, Dr. Novik's January 2014 examination noted no abnormalities or functional limitations related to Plaintiff's lumbar spine or bilateral lower extremities after his automobile accidents in 2012 and 2013. (Tr. 19.)

Concerning Plaintiff's alleged psychiatric disabilities, the ALJ found that the credible evidence did not support a finding of disability. She properly gave little weight to Dr. Ivanov's opinion that Plaintiff is "100% psychiatrically disabled." Dr. Ivanov only treated Plaintiff for three months. In addition, there is no record of any recurrent emergency room or inpatient hospitalizations due to an exacerbation of his psychiatric symptoms. However, the ALJ did take into consideration Plaintiff's subjective complaints as well as Dr. Barnett's psychological

15

diagnoses and determined that Plaintiff is capable of simple tasks in a low contact environment involving occasional contact with supervisors but no contact with the general public. (Tr. 20.)

These shortfalls in Plaintiff's medical evidence allowed ALJ Krappa to conclude that Plaintiff did not meet the requirements of listings 1.02, 1.04, or 12.04. In regard to listing 1.02, Plaintiff's January 2012 MRI of his left shoulder revealed infraspinatus and supraspinatus peritendinitis, moderate hypertrophic degenerative joint disease of the acromioclavicular joint, and deficiency and irregularity of the anterior superior labrum, but there was no joint space narrowing, bony destruction or ankyloses as required by the listing. (Tr. 275.) Plaintiff's shoulder examination in November 2012 was normal and his examination in January 2014 revealed normal motor strength and sensory examinations in both upper extremities. (Tr. 334, 373.) In regard to listing 1.04, Plaintiff's November 2012 examination revealed only a mild restriction in cervical range of motion. (Tr. 332.) Examinations that took place more recently revealed improvement in his condition. (Tr. 373, 377, 385.) In regard to listing 12.04, Plaintiff does not satisfy section B because his mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episode of decompensation, each of extended duration. 20 C.F.R. pt. 404, subpt. P app. 1, § 12.04B. Plaintiff does not satisfy subsections C(1) and C(2) because there is no evidence of repeated episodes of decompensation each of extended duration and there is no evidence that "a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." 20 C.F.R. pt. 404, subpt. P app. 1, § 12.04(C)(2). In addition, Plaintiff is unable to satisfy the requirements of subsection C(3) because

he lives independently and is able to care for his personal needs, care for his pets, go out alone, and handle his financial affairs. (Tr. 15, 198, 224, 226-27.)

Finally, Plaintiff alleges that ALJ Krappa did not consider his ailments in combination. (Tr. 18.) However, an ALJ need not "use particular language or adhere to a particular format in conducting his analysis . . . [so far as] there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Here, the ALJ considered Plaintiff's ailments separately and in combination and determined that they do not meet or medically equal the severity of a listed impairment. (Tr. 14-16.)

### 2. Substantial Evidence Supports the ALJ's RFC Determination

Plaintiff argues that certain findings in the ALJ's RFC ignore evidence in the record. (Pl.'s Br. 27-28.) However, "the ALJ need only include in the RFC those limitations which he finds to be credible." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007). In addition, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)). Here, the ALJ referenced the credible evidence in the record, including medical treatment from the same doctors over an extended period of time, and compared Plaintiff's subjective complaints to his daily activities when making her RFC determination. (*See* Tr. 16-20.) In addition, as discussed *supra*, the ALJ explained why she gave little weight to Dr. Ivanov's findings. (Tr. 20.) Using this evidence, the ALJ constructed a detailed RFC that limits Plaintiff to light work with the additional limitations that he must be given the opportunity every 45 minutes to one hour to stand and stretch for three to five minutes; can only reach occasionally overhead with both arms; can frequently reach in front and laterally to 18 inches; can frequently use ladders, ropes or scaffolds; can frequently climb ramps or stairs; can frequently crawl; is unlimited for balancing, stooping,

kneeling and crouching; can perform jobs that were simple and repetitive and required only occasional contact with supervisors but no contact with the general public; cannot perform quick movements with his head; and is only able to rotate his head side-to-side up to 45 degrees, but his whole body can be moved to look side-to-side. (Tr. 16.) It is also important to note that the RFC is an administrative finding and not a medical decision, and the ALJ's decision must not be set aside simply because "[a reviewing court] would have reached a different decision." *Cruz*, 244 F. App'x. at 479 (citing *Hartranft*, 181 F.3d at 360). The possibility of another ALJ reaching a different determination from the credible evidence on record is not reason enough for ALJ Krappa's decision to be set aside.

Plaintiff also claims that, because his RFC was allegedly improperly constructed, the hypothetical given to the vocational expert does not include the entirety of his mental disabilities and therefore does not sufficiently represent his limitations. (Pl.'s Br. at 31.) However, Plaintiff does not specify which of these additional limitations the ALJ allegedly should have included in her hypothetical. Similar to the construction of the RFC, the ALJ must only consider credibly established limitations when constructing the hypothetical presented to the vocational expert. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Here, the ALJ included all of Plaintiff's credibly established mental limitations when she presented her hypothetical to the vocational expert. (Tr. 54.) The ALJ's hypothetical limited Plaintiff to simple and repetitive tasks that required only occasional contact with supervisors and no contact with the general public, which was supported by Dr. Barnett's credible opinion that Plaintiff had below-average memory and concentration and would have difficulty coping with stressful situations. (Tr. 54, 325.) The vocational expert took into account the credibly established limitations that the ALJ presented in her hypothetical when determining that a person with Plaintiff's limitations would be able to

perform certain jobs that exist in significant numbers in the national economy. Therefore, ALJ Krappa properly formulated both Plaintiff's RFC and the hypothetical presented to the vocational expert.

## IV. CONCLUSION

Because this Court finds that ALJ Krappa's factual findings are supported by substantial credible evidence in the record and that her legal conclusions are correct, the Commissioner's determination is **AFFIRMED**.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**

Orig:        Clerk  
cc:          Parties